UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GORDON B. DEMPSEY and GORDON B. DEMPSEY, P.C., | ) ) ) | |
| Plaintiffs, | ) ) | 1:06-cv-0996-JDT-TAB |
| vs. | ) ) ) | |
| JP MORGAN CHASE BANK, N.A., | ) ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR FEES**

**(Doc. No. 9)[1]**

This comes before the court pursuant to Defendant JP Morgan Chase Bank's ("Chase") Motion to Dismiss and Request for Fees (Doc. No. 9).  Defendant held a mortgage on a piece of property owned by Plaintiff Gordon B. Dempsey.[2]  Chase purchased this property by bidding its indebtedness at a sheriff's sale ordered by the Marion Superior Court to fulfill a deficiency judgment.  Defendant then petitioned the Marion Superior Court for a writ of assistance to take possession of the property.

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

[2]  Both Mr. Dempsey and his professional service corporation are named as Plaintiffs; however, Mr. Dempsey makes no attempt in his complaint or in his briefs to distinguish the two.  In fact, Gordon B. Dempsey, P.C. is merely the alter ego of Gordon B. Dempsey.  His entire complaint is phrased in the singular and the court will borrow that convention in its entry.  Nowhere does Dempsey argue that separate treatment of the plaintiffs is meaningful.  Defendants point out that because Mr. Dempsey and the professional service corporation were in privity, collateral estoppel of one applies to the other.  *Bartle v. Health Quest Realty VII*, 768 N.E.2d 912, 918 (Ind. Ct. App. 2002) (citing Restatement (Second) of Judgments § 59(3)).

Plaintiff argued against the sale and the writ in state court and lost.  Now Plaintiff has

cobbled together a list of tenuous arguments for why he should be awarded the property

back or at least compensated for his loss.  Defendant responded to the complaint with a

motion to dismiss due to res judicata arguing that Plaintiff already made these

arguments in state court.  Defendant also asks for fees pursuant to Indiana Code § 34-

52-1-1.

## I.     BACKGROUND

This action is a small part of a much larger series of court proceedings involving

Mr. Dempsey's attempt to rehabilitate a property in the Haughville neighborhood of

Indianapolis.  This drama has unfolded in the Marion Superior Court, the Indiana Court

of Appeals, the Indiana Supreme Court, the United States Bankruptcy Court, and this

United States District Court.  The court will only relay the facts relevant to this action.

Even this snippet demonstrates a flavor for the overall proceedings.

On June 30, 2004, Plaintiff lost a judgment in Marion Superior Court to George

C. Carter and Oleva Gay Carter.  The Marion Superior Court determined an amount of

deficiency on May 12, 2005, and ordered an execution sale to take place May 18, 2005,

on two properties owned by Dempsey.   At issue in this action was a property located on

Kessler Boulevard in Indianapolis ("Kessler Property").  It was used by Dempsey as an

office and contained two additional rental units.  Chase held a mortgage interest on this

property and bid the remaining amount of Dempsey's indebtedness at the May 18,

2005, sale.  As the only bidder, Chase won the auction, thus providing no benefit to the Carters.

On June 3, 2005, Chase petitioned the court for a writ of assistance to take possession of the property.  Dempsey filed a motion to set aside the May 18 sale and an objection to the writ of assistance on June 15, 2005.  On June 16, however, the court issued the writ of assistance and denied Dempsey's motion on June 17.  Dempsey made a motion to the Indiana Court of Appeals to stay the writ of assistance pending appeal on July 8, which was denied on July 15.  On July 19, the sheriff evicted Dempsey and the tenants of the Kessler Property.

Dempsey filed this action in state court on June 6, 2006.  It was removed to federal court by Chase pursuant to 28 U.S.C. § 1446 based on diversity jurisdiction.  With his complaint, Dempsey filed a "Petition for Restraining Order, and Possession Pending Trial on the Merits."  A preliminary injunction hearing was held July 7, 2006, in front of District Court Judge David F. Hamilton.  The preliminary injunction was denied the same day.

On July 5, 2006, Chase filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing res judicata barred Dempsey's claims.  Chase further argued that the relief Dempsey sought in federal court violated the Anti-Injunction Act, 28 U.S.C. § 2283, which prohibits a federal court from ordering a stay of state court

proceedings.[3]  Chase also argued that it was entitled to attorneys' fees pursuant to Indiana Code § 34-52-1-1 because Dempsey's claims were "frivolous, unreasonable, or groundless."  Based on the complaint and the parties' briefs on the motion to dismiss, the court was concerned that the *Rooker-Feldman* doctrine might apply.  Thus, the court issued an Entry Requesting Additional Briefs on December 13, 2006.  The parties responded with additional briefs and now the court is prepared to issue its ruling on Chase's motion to dismiss.

## II.   DISCUSSION

When considering a motion under Federal Rule Civil Procedure 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the Plaintiff.  *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004).  Under the federal notice pleading regime, "a complaint pleads *claims*, which is to say grievances."  *Rapid Test Prods., Inc. v. Durham Sch. Servs., Inc.*, No. 05-4066, slip. op. at 4 (7th Cir. Aug. 18, 2006).  It "need not set out either legal theories or comprehensive factual narratives."  *Id.* at 5.  Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

---

[3]  An odd argument, considering Chase was the party that removed the case from state to federal court in the first place.

-4-

The first challenge for the court is to pinpoint exactly what Dempsey is alleging in his complaint.  Plaintiff is a lawyer who is representing himself pro se.  His filings with the court are, charitably speaking, difficult to discern.  The court has soldiered through Dempsey's filings in this matter and believes his allegations fit roughly into three categories: breach of the mortgage agreement, violation of the tenants' due process rights, and improper execution of the writ.

### A.    Mortgage Agreement

Mr. Dempsey's main argument relies on the language of the mortgage agreement.  He refers to language in the mortgage contract which reads:

> If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests.  All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by the Lender to the date of repayment by Grantor.

(Pl.'s Ex. Prelim. Inj. 73.)[4]  He argues that while this language may have allowed Chase to buy the property at the May 18, 2005, sale, it could only do so to "protect Lender's interests".   He takes this to mean that when Chase bid at the May 22 sale, it was legally

---

[4]  Normally matters outside of the pleadings cannot be considered on a 12(b) motion. However, the mortgage agreement was referenced in the Plaintiff's Complaint and is central to the Plaintiff's case; therefore, the court may consider it on this motion. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993).  This is true for the May 17, 2005 letter mentioned later as well.  The court may also take judicial notice of the state court records, which are matters of public record, without converting the 12(b)(6) motion into one for summary judgment.  *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

bound to maintain the status quo.  He focuses heavily on a May 17, 2005, letter from Chase claiming that he had until June 16 to cure his default under his mortgage.  (Pl.'s Ex. Prelim. Inj. 11.)  He believes that this coupled with the mortgage agreement means that, sheriff's sale notwithstanding, he had "cure rights" until June 16.  Chase, on the other hand, acted as if the May 22 sale extinguished the previous relationship and any right Dempsey had to it.  Dempsey wants compensation for Chase using the May 22 sale to destroy his equity rather than maintain the status quo.  In his appeal to the Indiana Court of Appeals, Dempsey made this very same argument.  (Pl.'s Ex. Prelim. Inj. 76.)

Upon reading Mr. Dempsey's complaint and the briefs regarding Chase's motion to dismiss, the court was concerned that the *Rooker-Feldman* doctrine might apply to Mr. Dempsey's claim.  "The *Rooker-Feldman* doctrine precludes lower federal courts from exercising jurisdiction over claims that would require them to review a final judgment of a state court."  *Manley v. City of Chicago*, 236 F.3d 392 (7th Cir. 2001). *Rooker-Feldman* involves the court's subject matter jurisdiction.  *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 (7th Cir. 2000).  Therefore, when it applies, a district court lacks jurisdiction even to decide res judicata.  *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996).

Because res judicata and *Rooker-Feldman* both deal with state judgments, it is many times difficult to decide whether *Rooker-Feldman* applies to prohibit consideration of res judicata or whether it does not, allowing a consideration of res judicata.  In making this determination, the court asks "whether the injury alleged by the federal

plaintiff resulted from the state court judgment itself or is distinct from that judgment."
*Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999).

As the Seventh Circuit explained the distinction in *GASH Associates v. Village of Rosemont, Ill.*:

> To put this differently, the injury of which GASH complains was caused by the judgment, just as in *Rooker*, *Feldman*, and *Ritter*. GASH did not suffer an injury out of court and then fail to get relief from state court; its injury came from the judgment confirming the sale, rather than requiring the Village to condemn the building independently of the foreclosure, as GASH had demanded.

995 F.2d 726, 729 (7th Cir. 1993).

On initial glance, it might appear that Dempsey's claim is attacking the state court judgment in a way that violates *Rooker-Feldman*. After all, Dempsey asks for a return of the property, which would run directly counter to the state court judgments upholding the sale of the property and ordering the sheriff to put Chase in possession of the property. Indeed, these were the concerns that led the court to issue its Entry Requesting Additional Briefs on the subject of *Rooker-Feldman*.

However, *Rooker-Feldman* does not bar this court's jurisdiction over Mr. Dempsey's mortgage agreements claim. His alleged injury is distinct from the state court judgment. Dempsey alleges injury based on his rights under the mortgage agreement, not an injury from the state court judgment. It is not inconsistent for Dempsey to argue, as he essentially does, that even if the state court judgment were

valid, there exists a claim against Chase because the mortgage agreement limited it independent of any state court judgment.  In Dempsey's own words:

> this suit is directed mainly at conduct by Chase after the May 18 sale, and is oriented in large part to mortgage language, addressing such post-sale conduct.  The May 18, 05 purchase was OK on Chase's part, if Chase had used it to sustain the parties' pending agreement, instead of forcing Plaintiff out.

(Pls.' Resp. Mot. Dismiss 9-10.)  Therefore, Dempsey asks the court not to review the state court judgment, but to enforce his rights under the mortgage agreement. Therefore, this court has original jurisdiction due to diversity.[5]

But when the merits are reviewed, it is clear that res judicata prohibits Plaintiffs' claims as it related to the mortgage agreement.  The Full Faith and Credit Act, 28 U.S.C. § 1738, "directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state."  *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996).  Therefore, a federal court sitting in Indiana must use Indiana preclusion law to determine whether res judicata bars a claim.  *Armes v. Noble County Sheriff Dep't*, 215 F. Supp. 2d 1008, 1014 (N.D. Ind. 2002) (citing several Seventh Circuit cases including *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000)).

---

[5]  In his Memorandum of Plaintiff as to *Rooker-Feldman*, Dempsey argues that there may be a lack of diversity because he may move to add the Sheriff as a defendant in this action. (Mem. of Pl. as to *Rooker-Feldman* 3-4.)  The court need not speculate about the motivations for or merits of adding the sheriff to the suit.  Dempsey has, as of yet, not filed such a motion. Removal is proper if, as of the time of removal, the plaintiff could have filed the case in federal court.  *Shannon v. Shannon*, 965 F.2d 542, 545 (7th Cir. 1992).  At the time of removal, this court had jurisdiction over this claim due to diversity.  Nor is there is anything before the court to indicate that it does not currently have subject-matter jurisdiction over this claim.

Collateral estoppel is a branch of res judicata that applies to bar subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in a subsequent lawsuit. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005). Collateral estoppel applies even where the two actions are on a different claim. *Id.* To apply, the issue must have been actually litigated and determined in the former adjudication. *Wedel v. Am. Elec. Power Serv. Corp.*, 681 N.E.2d 1122, 1131 (Ind. Ct. App. 1997). It will not apply to matters that were not expressly adjudicated but can be inferred only from argument. *Pritchett v. Heil*, 756 N.E.2d 561, 565 (Ind. Ct. App. 2001). Where, as here, a party wishes to use collateral estoppel defensively to avoid liability, there are two considerations: whether the party had a full and fair opportunity to litigate the issue and whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. *Herr*, 834 N.E.2d at 703.

Whether mortgage obligations survived the sheriff's sale was brought forth in the previous state court litigation and decided against Dempsey. As Dempsey writes in his brief before the Indiana Court of Appeals:

> Para. 6. b. of Buyer's June 15, 05 Motion to Set Aside Sales (App 555) pointed out Buyer was on track under the loan, and believes the loan documents allowed Chase to buy at a sale to protect the parties' positions under the loan, but not supplant it.

(Pl.'s Ex. Prelim. Inj. 76.) The actual language in the motion is less clear, but still on point. The entire language of paragraph 6.b. reads: "Aware of the May 18 sale since April 20, 05 Bank advised Buyer in writing May 17, 04, relative to the May 14, 05

installment, that Buyer had well beyond May 18, 2004 to cure." (Def.'s Ex. Prelim. Inj. 108, at 4.) This paragraph claims the mortgage agreement survives the sheriff's sale and that Chase has breached it. This attempt to overturn the sheriff's sale was denied; thus, the issue was determined in the prior action. (Def.'s Ex. Prelim. Inj. 109.) Mr. Dempsey argued the point again in the Court of Appeals and the Court of Appeals refused to hear the argument because of Dempsey's "egregious violations" of the Indiana Rules of Appellate Procedure. *Dempsey v. Carter*, No. 49A05-0510-CV-603, slip op. at 6 (Ind. Ct. App. Jan. 18, 2007).

But even if Dempsey's claim were not barred by collateral estoppel, it would not survive a 12(b)(6) motion for failure to state a claim. Dempsey has provided no legal support for his novel idea that the mortgage agreement commands Chase to put everything back the way it was before the sheriff's sale. The language in the mortgage agreement Dempsey cites works exclusively to Chase's benefit, not his. And even if the language were contorted to mean what Dempsey want it to, he fails to grasp that his property was sold to Chase for the price of his outstanding loan. The loan is satisfied; the mortgage gone. Neither party has any remaining obligations to the other under the agreement.[6]

---

[6] In the hearing on the preliminary injunction, Judge Hamilton explained why Dempsey's interpretation of the mortgage agreement also worked against the state's interest in collecting the deficiency judgment:

> Let's look at this case from the perspective of the Carters. The Carters won a judgment against you. It's facially valid. They tried to collect on that judgment by forcing the sale of your property. Apparently, that sale did not generate anything for them. What you're trying to do in this case is set aside, as a practical matter, the effect of that sale, recover the property for yourself simply by paying the

(continued...)

Issue preclusion applies because Mr. Dempsey argued that rights from the mortgage agreement survived the sheriff's sale to the Marion Superior Court and to the Indiana Court of Appeals in his attempt to overturn the sale. His attempt to overturn the sale was denied. Therefore, his claim in this court attempts to relitigate that issue and will be **DISMISSED**.

### B.    Tenants' Due Process Rights

Dempsey also argues that his tenants were denied due process when they were evicted from the Kessler property without an opportunity to be heard. His complaint cites the Indiana state case *Como, Inc. v. Carson Square, Inc.*, 648 N.E.2d 1247 (Ind. Ct. App. 1995). In *Como*, the Indiana Court of Appeals reversed summary judgment against defendant leaseholder, Como. Como held a lease in a strip mall that was sold in a foreclosure sale. *Id.* at 1247. Carson Square, the purchaser at the foreclosure sale, sued to repossess the leased premises. *Id.* at 1248. Como argued that extinguishing the leasehold would violate due process because Como was not a party to the foreclosure action, thus he had no notice or opportunity to be heard. *Id.* The Court of Appeals agreed and reversed, finding that the foreclosure action did not abolish Como's leasehold. *Id.* at 1249. According to Dempsey, this same principle required

---

[6](...continued)
arrears on the mortgage with Chase Bank and, therefore, put yourself back in ownership with your property with the equity, without the opportunity of the Carter that the Indiana courts say they may have.

(Tr. Pl's. Pet. Restraining Order & Possession Pending Trial 29.)

-11-

Chase to maintain the leases of his two tenants, who similarly were not given notice or an opportunity to be heard regarding the termination of their leaseholds.

However, whether *Como* is applicable is not for this court to decide because Dempsey does not have standing to raise these claims on behalf of his tenants. Assuming, *arguendo*, that Demspey himself has an injury sufficient to meet the constitutional "case or controversy" under Article III, prudential limitations normally prevent one from "rest[ing] his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The Supreme Court has articulated two reasons for this prudential limitation. The first is that "courts should not adjudicate such rights unnecessarily" and perhaps the holders do not want to pursue them or can enjoy them regardless of the outcome of the case. *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976). The second is that the possessors themselves are the most effective parties to argue for their rights. *Id.* at 114.

Dempsey claims that because his tenants' legal rights to notice and hearing were violated, he was injured. Thus, he is attempting to claim relief on the constitutional rights of his tenants. There are cases where third party standing is appropriate. *E.g.*, *Craig v. Boren*, 429 U.S. 190 (1976) (beer vendor can assert equal protection rights of potential underage male customers); *Singleton*, 428 U.S. 106 (doctors could maintain action on behalf of potential patients). But these exceptions are based on two factual elements: "(1) 'the relationship of the litigant to the person whose right he seeks to assert,' and (2) 'the ability of the third party to assert his own right.'" *Indemnified Capital Invs., S.A. v. R. J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1410 (7th Cir. 1993) (quoting

-12-

*Singleton*, 428 U.S. at 114-16).  Neither of these factors cut for third party standing in this case.

For the first element, it is not true here that "[t]he relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Singleton*, 428 U.S. at 115.  The landlord-tenant relationship is much different from the doctor-patient relationship of *Singleton*; it is even different from the beer-vendor–potential customer relationship in *Craig*.  In those, "the enjoyment of the right [was] inextricably bound up with the activity the litigant wishe[d] to pursue . . . ." *Singleton*, 428 U.S. at 114.  Here, Dempsey wants compensation to restore his tenants to their units or find new tenants and compensation for the embarrassment of the forced move.  Dempsey's interest in full occupancy of his former building bears only a tangential relationship to his tenants' due process rights and certainly is not "inextricably bound up" in a way that makes him "as effective a proponent" of the rights of his tenants.

Further, there is nothing standing in the way of his tenants pursuing a due process claim if they wish.  In *Singleton* and *Craig*, the transitory nature of the affected classes—pregnant women in *Singleton*, underage males in *Craig*—made it so that it was difficult for a potential proponent of those rights to get a final adjudication on that right before it became moot for that particular member of the class.  *Craig*, 429 U.S. at 194; *Singleton*, 428 at 117.  Here, there is no such concern; both of Dempsey's tenants can pursue their own rights as easily as Dempsey can.

-13-

For these reasons, the court finds that Mr. Dempsey does not have standing to assert the constitutional rights of his tenants.  This court, therefore, does not have subject-matter jurisdiction to hear this claim and, pursuant to 28 U.S.C. § 1447(c), **REMANDS** it to the state court from which it was removed.[7]

### C.    Execution of the Writ of Assistance

According to this complaint, a few days before Chase was to take possession of the property on authority of the writ of assistance, Dempsey left a phone message with Chase explaining that his cousin had died and that the visitation was July 19—the day Chase was to possess the property—and the funeral the next day.  He agreed he would move out under protest but not until after July 19.  Chase never responded, but instead simply enforced the writ on July 19 with the help of the Marion County Sheriff. Dempsey argues that it was "commercially unreasonable" for Chase not to wait a couple of days.

Chase does not directly address this claim in its Brief in Support of Its Motion to Dismiss (Doc. No. 10).  However, this is not significant because *sua sponte* dismissals for failure to state a claim are permitted in the Seventh Circuit, "provided that a sufficient basis for the court's action is evident from the plaintiff's pleading."  *Ledford v. Sullivan*,

---

[7]  In its Reply Brief in Support of Its Motion to Dismiss (Doc. No. 22), Chase argues that this claim should be dismissed for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(6).  However, the Seventh Circuit has stated clearly that "[s]tanding and ripeness are jurisdictional prerequisites."  *Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994).  Therefore, this "district court lack[s] subject-matter jurisdiction and [is] required under § 1447(c) to remand the claim to the state court from which it was removed." *Id.*

105 F.3d 354, 356 (7th Cir. 1997) (citing *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992)).

According to the Indiana Court of Appeals, "A writ of assistance is an equitable remedy normally used to transfer real property, the title of which has been previously adjudicated, as a means of enforcing the court's own decree." *TeWalt v. TeWalt*, 421 N.E.2d 415, 418 (Ind. Ct. App. 1981). The sheriff has the "right and duty" to execute the writ immediately upon receiving it. 7 C.J.S. *Assistance, Writ of* § 14.

There was no requirement that Chase execute its writ of assistance in a commercially reasonable manner.[8] Nor is there any requirement that Chase wait a few extra days for a death in Dempsey's family. Chase's right to the property had already been adjudicated. Dempsey could have avoided his trouble by moving out voluntarily and promptly when Chase obtained title to the property as opposed to forcing Chase to utilize the sheriff's department to enforce the court's decision. Therefore, Dempsey's claim will be **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### D.    Attorney's Fees

Finally, Chase claims that it is entitled to an award of its attorney's fees pursuant to Indiana Code § 34-52-1-1(b). This section reads:

---

[8] The Uniform Commercial Code requires that disposition of collateral after default must be done in a commercially reasonable manner. *See* U.C.C. § 9-504. However, this is a writ of assistance not the disposition of collateral; further, Article 9 of the U.C.C. does not apply to writs of assistance anyway. *See* U.C.C. § 9-102.

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Ind. Code § 34-52-1-1(b).  For the purposes of this section, a claim is frivolous if

it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law.

*America's Directories, Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1070-71 (Ind. Ct. App. 2005).  Dempsey never presented a rational argument on the merits for either the mortgage agreement claim or the execution of the writ claim, nor does there appear to be a legal basis for either claim.  Therefore, the court will **GRANT** Chase's motion for fees spent to defend those two claims.  Because the court does not have jurisdiction to decide Mr. Dempsey's claim regarding his tenants, the court will **DENY** the motion as it pertains to defending that claim because its merits have yet to be determined.

## III.   CONCLUSION

For the reasons set forth above, Dempsey's claim regarding the mortgage agreement is **DISMISSED** due to res judicata.  He has no standing to assert the due process rights of his tenants; therefore, that claim is **REMANDED** to the state court from

which is was removed.  Dempsey's claim regarding the execution of the Writ of

Assistance is **DISMISSED** on the merits.  Finally, the court **GRANTS** Chase's motion for

fees on the claims for which it has jurisdiction but **DENIES** it on the tenants' rights claim

because the court does not have jurisdiction to reach the merits on that claim.

Attorneys for Defendant shall have fourteen days to file and serve a Bill of Costs and

Petition for Attorney's Fees pursuant to Local Rule 54.1.

        ALL OF WHICH IS ENTERED this 16th day of February 2007.

_____
        John Daniel Tinder, Judge
        United States District Court

Copies to:

Magistrate Judge Tim A. Baker

Gordon Bartle Dempsey
gdempseypc@aol.com

Theodore J. Nowacki
BOSE MCKINNEY & EVANS, LLP
tnowacki@boselaw.com

Carina M. de la Torre
BOSE MCKINNEY & EVANS, LLP
cdelatorre@boselaw.com