UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GORDON B. DEMPSEY and GORDON B. )
DEMPSEY, P.C., )
                                                Plaintiffs, )
                                                )     1:06-cv-0996-JDT-TAB
            vs. )

JP MORGAN CHASE BANK, N.A., )
                                                Defendant. )

**ENTRY ON PLAINTIFF'S MOTION TO SET ASIDE JUDGMENT (Doc. No. 36), AND DEFENDANT'S PETITION FOR ATTORNEYS' FEES (Doc. No. 34) AND MOTION TO DISCHARGE LIS PENDENS (Doc. No. 40)**[1]

This comes before the court on several post-judgment motions made by the parties in this diversity suit removed from state court. On February 16, 2007, the court dismissed all of Plaintiff's claims with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, except one returned to state court.[2] The court also awarded Defendant JP Morgan Chase Bank, N.A. ("Chase") attorneys' fees under section 34-52-1-1(b) of the Indiana Code on the claims that were dismissed (but not the remaining claim returned to state court) because Dempsey was unable "to make a good faith and

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

[2] The court found that Dempsey lacked standing to assert the remaining claim, which was a claim on behalf of others rather than himself. Because the court lacked jurisdiction, the cause was returned to state court. *See Smith v. Wis. Depot of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994).

rational argument on the merits of the action." (Entry on Def.'s Mot. to Dismiss & Request for Fees 16.)

Chase filed its Verified Petition for Attorney's Fees on March 2, 2007 (Doc. No. 34), stating that counsel spent 123.3 hours working on this case and asking for fees of $56,659.50 and costs of $1,023.05 for a total of $57,682.55. Plaintiff responded with a smattering of arguments ranging from Chase's unwillingness to settle to the inefficiency of the associates at Chase's counsel, Bose McKinney & Evans ("Bose"), on particular tasks. Plaintiff also filed a motion to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure on March 5, 2007. (Doc. No. 36.) This motion essentially reargued his response to the original 12(b)(6) motion. In the meantime, Dempsey filed two Notices of Lis Pendens at the Marion County, Indiana, Clerk's Office on the property related to this case—one was based on the litigation before the court, the other was based on related litigation in state court. On July 24, 2007, Chase filed a Motion to Discharge Lis Pendens and requested attorneys' fees associated with filing that motion. (Doc. No. 40.) The Petition for Attorney's Fees and the Rule 59 motion are fully briefed.[3] Because the court believes there is no question of the merits of Chase's Motion to Discharge Lis Pendens, no response is required for the motion. The court therefore rules as follows:

---

[3] Chase filed its "Combined Response to Dempsey's Motion Under FRAP (sic) 59 and Reply in Support of Attorneys Fee Petition" (Doc. No. 38) about three months after it was due. *See* S.D. Ind. L.R. 7.1. Because Chase provided no reason that the court should accept this extremely untimely brief, the court will not consider it or Dempsey's reply to it in this Entry.

**I.     MOTION TO AMEND JUDGMENT**

Dempsey asks the court to reconsider its February 16, 2007, judgment dismissing with prejudice all of Dempsey's claims (except one on behalf of his tenants for which he lacked standing to assert). This is a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See Lorenzen v. Employees Ret. Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 231 (7th Cir. 1990). "[A] Rule 59(e) motion 'must clearly establish either a manifest error of law or fact or present newly discovered evidence.'" *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (quoting *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)); *see also Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511-12 (7th Cir. 2007).

The various disputes which have led to this matter have a long and complicated history that involves a state court action for breach of contract, a bankruptcy, and finally this action removed from state court because of the diversity of the parties. The court now briefly summarizes the necessary facts, but a more detailed history can be found in the February 16 Entry (Doc. No. 32) and a related bankruptcy appeal, *Dempsey v. Carter*, No. 1:04-cv-1308-JDT-TAB, 2006 WL 3590191 (S.D. Ind. Dec. 8, 2006) (Tinder, J.).

The facts relevant to this case begin with a state court judgment entered against Plaintiff Dempsey in favor of George C. and Oleva Gay Carter. To satisfy the judgment, an execution sale was ordered on some real estate owned by Dempsey and with a mortgage held by Defendant Chase. At the execution sale, Chase bid the amount of its

mortgage.  With no other bids, Chase took title of the property immediately.  Chase eventually obtained a Writ of Assistance from state court to evict Dempsey and his tenants from the property.

When Chase attempted to sell the property, Dempsey filed an action in state court to prevent the sale.  His theories for recovery of the property or damages (as consolidated and refined by this court) are that his mortgage agreement with Chase prevents Chase from taking away his title, that Chase improperly used the Writ of Assistance to remove him from the property, and that Chase did not give proper notice to his tenants.  Chase removed the case to United States District Court for the Southern District of Indiana where Judge David F. Hamilton ruled against Dempsey on his motion for a preliminary injunction.  In his entry, Judge Hamilton explained:

> Mr. Dempsey has shown no likelihood of success in his effort to prevent the bank from selling the Kessler Avenue property.  The record shows a facially valid sheriff's execution sale pursuant to Indiana Trial Rule 69(A), which provides that the sale is "without right of redemption."  Mr. Dempsey tried to prevent the sale before it occurred, but both the Marion Superior Court and the Indiana Court of Appeals rejected those efforts.

(Doc. No. 18, p. 2.)

The case was later reassigned to this court's docket and the court ruled on Chase's Motion to Dismiss.  On Chase's mortgage agreement claim, the court found that collateral estoppel barred it; however, in the alternative, the court found that on the merits, the complaint did not state a claim upon which relief might be granted.  On the Writ of Assistance claim, the court found that it did not state a claim upon which relief

may be granted. The court also found that both of these claims were frivolous because Dempsey never presented a rational argument or any authority as to why they had merit and awarded Chase attorneys' fees pursuant to section 34-52-1-1(b) of the Indiana Code.[4]

In his Rule 59(e) motion, Dempsey presented a eclectic mix of underdeveloped arguments none of which convince the court that there was a manifest error of law or fact involved in its dismissing of Dempsey's claims. The court need not address each one because fundamental to Dempsey's claim is his interpretation of the mortgage agreement. Nothing presented by Dempsey in his Rule 59 motion persuades the court that the mortgage agreement conveys to Dempsey the rights he believes he has.

To summarize, Dempsey believes that the language of his mortgage agreement prevents Chase from buying the mortgaged real estate at an execution sale without then putting Dempsey back in possession.[5] The language he refers to states:

---

[4] Indiana Code section 34-52-1-1(b) states:

In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

[5] The court in its previous entry, gave Dempsey the benefit of the doubt that he was no longer claiming he had a right to be put back in possession, which for the reasons stated by
(continued...)

> If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by the Lender to the date of repayment by Grantor.

(Pl.'s Ex. Prelim. Inj. 73.)  The court stands by its previous entry that this language creates no obligation that Chase put Dempsey back in possession.

Dempsey in his Rule 59 motion claims that he is also relying on the equitable nature of a mortgage foreclosure.  Of course, this was not a mortgage foreclosure. Dempsey continues to believe incorrectly that this execution sale was like a mortgage foreclosure; however, these are distinct procedures in Indiana.  *Compare* Ind. Code § 32-30-10-1 *et* seq. *with* Ind. Code § 34-55-6-1.  While mortgage foreclosure provides a right of redemption, execution on a judgment does not.  *See* Ind. Code § 32-30-10-11; Ind. T. R. 69(A), (C).  There is nothing inherently inequitable about a lien holder bidding at an execution sale or, upon buying the property, refusing to give back the property to the previous owner who lacks a right of redemption.  The court **DENIES** Plaintiff's Rule 59 motion.

---

[5](...continued)
Judge Hamilton he clearly does not.  But it appears from his lis pendens filing that he still believes that he should be able to undo the execution sale.

## II.     MOTION FOR ATTORNEYS' FEES

Because this case is based on diversity, Indiana law governs the awarding of attorneys' fees.  *See Jackman v. WMAC Inv. Corp.*, 809 F.2d 377, 383 (7th Cir. 1987).  A trial court has great discretion in determining the amount of an award of attorneys' fees; an award will only be overturned when it is clearly against the logic and effect of the facts and circumstances before the court.  *See Hill v. Davis*, 850 N.E.2d 993, 996 (Ind. Ct. App. 2006).  Although the Indiana courts have stated that the non-exclusive factors listed in the Rules of Professional Conduct are useful in determining the reasonableness of an award of attorney's fees, evidence is not required on each factor.  *Id.* at 997.[6]

---

[6]  The factors listed in Rule 1.5 of the Indiana Rules of Professional Conduct are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

In its February 16, 2007, entry, the court awarded Chase attorney's fees related to two of Dempsey's three claims. Chase filed its Verified Petition for Attorneys' Fees on March 2, 2007 asking for $56,659.50 dollars for fees and $1,023.05 for costs. Dempsey does not argue about the amount for costs; however, he presents several arguments, some general and some specific, on the reasonableness of the fees asked for by Chase. The court will briefly address the general arguments before addressing the specific ones. There are two general arguments. First, Dempsey argues that section 34-52-1-1 of the Indiana Code does not apply in federal court. This is akin to a Rule 59(e) motion asking the court to amend its judgment that Chase is entitled to attorneys' fees. Next, he argues that Chase should have settled the case.

Dempsey's argument about the applicability of section 34-52-1-1 comes from an argument made in *Mas Capital, Inc. v. Biodelivery Sciences International, Inc.*, No. 3:04-cv-0092-DFH-WGH, 2006 WL 2472744, at *7 n.6 (S.D. Ind. Aug. 25, 2006), a case before another judge of this court. In that case, plaintiff argued that it could not be assessed attorneys' fees pursuant to section 34-52-1-1 because it ran counter to the requirements of Rule11 of the Federal Rules of Civil Procedure. It relied on a footnote in a Supreme Court case stating, in dicta, that state law would apply to awards of attorney's fees "where the state law does not run counter to a valid federal statute or rule of court." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975). In particular, Rule 11 requires a 21-day warning shot letter before a request for sanctions, which defendant in that case had not done. There is no indication that Defendant sent a 21-day warning shot letter in this case either.

However, the court need not resolve this tricky issue. Dempsey, raising the issue for the first time after having had an opportunity to respond to Chase's request for attorney's fees pursuant to section 34-52-1-1 and after the court ruled on the motion, has waived it. *See Krueger Int'l, Inc. v. Blank*, 225 F.3d 806, 811 (7th Cir. 2000) (argument brought up for first time in Rule 59(e) motion waived); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) (Rule 59(e) "certainly does not allow a party to . . . advance argument that could and should have been presented to the district court prior to judgment.").

As for Dempsey's claim that Chase should have settled rather than incur its attorneys' fees, that is easily disposed. The court found that these claims were frivolous; the policy of the statute is to discourage these frivolous arguments. *Cf. Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind. 1998) (statute, as previously codified, "strikes a balance between respect for an attorney's duty of zealous advocacy and 'the important policy of discouraging unnecessary and unwarranted litigation.'"). To say it is Chase's fault it incurred these fees because it refused a nuisance settlement ignores the purpose of the statute. The statute does not compel Chase to "mitigate" its damages by quickly settling frivolous claims; it compels Dempsey not to bring them.

Dempsey also makes three arguments that could be considered specific to particular items on Chase's breakdown of its costs. First, he objects to charges for Bose lawyers talking to each other and to their client. Second, he objects to the amount of time it took the Bose lawyers to prepare three relatively standard documents. Third,

he objects to the fees associated with briefing on the *Rooker-Feldman* doctrine, which was raised sua sponte by the court.[7]

Dempsey has provided no support for his argument that the fees related to "lawyers talking to each other" is unreasonable. All he presents is a list of charges with no explanation for why these charges are unreasonable. Obviously, lawyers in a law firm work together and may need to converse. It is not unreasonable for Bose to charge its client for this time and the court is not convinced that the amount of time billed for this was unreasonable. Dempsey argues that by cutting and pasting from previous cases, the appearances, automatic enlargement, and notice of removal should have taken half an hour instead of ten. The court is simply not convinced that the amount of time spent on these filings was unreasonable.

The court does agree with Dempsey that he should not be assessed for the fees associated with briefing on *Rooker-Feldman*. The award of fees is only for costs related to those frivolous matters filed by Dempsey. It was the court that ordered the briefings on *Rooker-Feldman*, and this was due not to Dempsey's complaint but language in Defendant's brief that Dempsey was "attacking the issuance of the writ of assistance" and was "challenging the proceedings." (Def.'s Br. 5, 6.) The court, in its discretion,

---

[7] Dempsey makes two additional arguments in his brief. First, he argues that the fees are unreasonable because they amount to nearly half the value of the property. This is another way of saying Chase should have settled earlier, which the court has already addressed. Second, he hints that Bose had ulterior motives to bill hours. He states: "Plaintiff notes how large law firms compete with each other based on annual billings, for ranking in professional publications." (Response of Pl. to Fee Pet. 3.) Dempsey provides no basis for this accusation and it will not be addressed.

declines to award attorney's fees on this issue.  It appears to the court from the itemized accounting in the petition that Chase incurred fees of roughly $13,000 researching and briefing the *Rooker-Feldman* issue.[8]  Discounting this amount by 5%, as Bose did at billing (*see* Verified Pet. for Attorney's Fees 2), leaves an amount of $12,350, which will be taken off the fee amount.[9]

The court will also reduce the award because Chase did not break out what proportion was spent on defending the tenant's rights claim.  The court did not award attorneys' fees on that claim because the court did not have jurisdiction to hear it and thus could not determine that it was frivolous.  *Cf. Wolfe v. Eagle Ridge Holding Co., LLC.*, No. 61A01-0610-cv-453, 2007 WL 2012401, at *9 (Ind. Ct. App. July 13, 2007) (noting defendant "incurred attorney fees in litigating a variety of issues, only one of which might be classified as frivolous and would permit it to recover attorney fees").  The court has no way of knowing what proportion of Chase's time and effort was spend

---

[8] It is impossible to get a more exact amount because some of the entries are unclear as to what percent was on *Rooker-Feldman* as opposed to other issues.

[9] Additionally, Chase made no timely response to Dempsey's argument that he should not be taxed for the fees associated with briefing the *Rooker-Feldman* issue.  Although the court does not consider Chase's untimely response, it notes Chase's only mention of this issue in its Reply in Support of Attorneys Fee Petition is to say:

> Chase leaves to the sound discretion of the Court whether and to what extent the Court deems it [] reasonable and appropriate to award fees with respect to briefing the Rooker-Feldman issue.  Chase would point out, however, that the Rooker-Feldman issue was closely related to the determination of Chase's Motion to Dismiss, particularly with respect to the preclusion arguments that were central to Chase's Motion.

(Def.'s Combined Response to Dempsey's Mot. Under FRAP (sic) 59 and Reply in Support of Attorneys Fee Petition 6-7.)

on this claim compared to the others because Chase did not address this at all in their Petition.  Therefore, because the court considered this to be one-third of the issues in the case, the court will take a third off the remaining fee amount.  This brings the fees down to $29,539.67;[10] with costs of $1,023.05, the total amount taxed to Dempsey is $30,562.72.

### III.    MOTION TO DISCHARGE LIS PENDENS

Lis pendens is a way to give notice to the public, and in particular to potential buyers, that litigation is pending which may affect the rights in a piece of property.  *See UFG, LLC v. Southwest Corp.*, 784 N.E.2d 536, 545 (Ind. Ct. App. 2003).  After this court entered judgment against Dempsey, Dempsey filed two lis pendens on the property at issue in this case.  The first is captioned in a related state case which was never before this court.  The second is captioned as the state court action which was removed in this case and remanded back to the state.  Both notices mention that this court has not ruled on Dempsey's claims pursuant to section 32-20-2-1 and 12 of the Indiana Code.[11]  Although true, Dempsey has never raised sections 32-20-2-1 or 12 in this court.   Chase argues that it is entitled to have these notices of lis pendens record that there has been a satisfaction of this interest because the court has ruled that Dempsey has no interest in the property.  *See* Ind. Code § 32-30-11-7.

---

[10] $56,659.50 (Chase's requested amount) - $12,350 (*Rooker-Feldman* fees) = $44,309.50.  $44,309.50 x (2/3) = $29,539.67.

[11] In the Notice of Lis Pendens that Dempsey filed he actually mentions section 32-2-1-1 and 12 of the Indiana Code; however, he attaches section 32-20-2-1 and 12, and it appears that this is the section that he had in mind (32-2-1-1 and 12 have been repealed).

>Indiana Code section 32-30-11-7 provides:
>
>>Upon the *final determination* of any suit brought:
>>
>>(1) for the purposes described in section 2 or 3 of this chapter; and
>>
>>(2) adversely to the party seeking to enforce a lien upon, right to, or interest in the real estate;
>>
>>*the court rendering the judgment* shall order the proper clerk to enter in the lis pendens record a satisfaction of the lien, right, or interest sought to be enforced against the real estate.  When the entry is made, the real estate is forever discharged from the lien, right, or interest.

Ind. Code § 32-30-11-7 (emphasis added).

Unfortunately for Defendant, the underlying action has not been completely dismissed but was remanded to state court; therefore, there has been no final determination in that state court case.  Further, this was not the court that issued the judgment in the related state court case, *Carter v. Dempsey*.  Although it appears that Dempsey had no right to use lis pendens in the manner that he did, this court does not have the power pursuant to Indiana Code section 32-30-11-7 to order the discharge of the lis pendens. For this reason, Chase will have **TWENTY DAYS** to show cause why the Motion to Discharge Lis Pendens should not be denied.

**IV.  CONCLUSION**

This Entry involved three separate motions.  For the reasons stated above, the court **DENIES** Plaintiff's Rule 59(e) motion.  The court also reduces the amount of the attorney's fees to $29,539.67.  With costs, the total taxed to Dempsey is $30,562.72.

Finally, the court gives Chase **TWENTY DAYS** to show cause why the Motion to Discharge Lis Pendens should not be denied.

ALL OF WHICH IS ENTERED this 9th day of August 2007.

John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge Tim A. Baker

Gordon Bartle Dempsey
gdempseypc@aol.com

Theodore J. Nowacki
BOSE MCKINNEY & EVANS, LLP
tnowacki@boselaw.com

Carina M. de la Torre
BOSE MCKINNEY & EVANS, LLP
cdelatorre@boselaw.com